# ALLEGHENY COUNTY,

## December Term, 1798.

### Joseph Marshal *v.* James Sprott.

THIS was an action of *indebitatus affumfit*, for money had and received.

When the law of 3d *April*, 1792, opened the Land-Office for the difpofition of land weft of the *Allegheny* river, many fuppofed, that each perfon had a right to appropriate to himfelf, by fettlement only, as well as by warrant, as many tracts of land as he could procure to be fettled. This principle, taken as certain, was immoderately abufed. And a great number of tracts were fo claimed by each of many individuals, by means of trifling cabbins, deadenings, &c. which they called *improvements*; but which had no kind of refemblance to what the law intended, "an actual perfonal refident fettlement, with a manifeft intention of making it a place of abode, and the means of fupporting a family."

Of thefe the defendant feems to have been one, and, by fuch improvements, claimed feveral tracts, which he propofed to fell to fettlers. Two hundred acres, the half of one of his tracts fo claimed, he fold to the plaintiff, for 200 dollars, by an article dated 24th *February*, 1797, binding the plaintiff to clear ten acres, and refide on the land five years. This fettlement and refidence would have intitled the fettler, and, as *Sprott* conceived, would have intitled him, under the law, on the payment of the purchafe money, to a patent for 400 acres.

In *April*, 1797, *Marfhal*, going to fettle on this land, found one *Lowry*, with his family, refiding there; who, having raifed a crop of corn there, the year before, claimed a tract of 400 acres. There were other fettlers round, and there was no reafon to believe, that *Lowry* could have more land to his fettlement, out of their boundaries, than 400 acres. In *February*, 1797, one *Willis* had applied to *Sprott* for the land. *Sprott* told him, he had promifed it to *Marfhal*, the fall before, and

if he ſtood to his bargain, he would not give it to ano- 1798.
ther. They went to *Marſhal*, and he ſtood to his bar-
gain, and paid *Sprott* part of the money. There was
no evidence, that *Marſhal* knew any adverſe poſſeſſion.

*Brackenridge*, for the defendant, offered to prove a
parole contract previous to the article.

PRESIDENT. The parties have reduced all their pre-
vious negotiation to the points ſtated in the article.—
There is no ſuggeſtion of fraud.

*Brackenridge* then called a brother of the defendant,
to prove, that, at the time of the payment of the money,
*Sprott* offered to *Marſhal*, to give up the bargain, and
demand no money, if he relinquiſhed his claim to the
land.

*Semple*, for the plaintiff, objected to this teſtimony,
and ſtated, that *Sprott* had brought an action againſt
*Marſhal* on the article.

PRESIDENT. If an action be brought on the cove-
nant, *Sprott* can recover damages for any default of
*Marſhal*. *Marſhal*, having no knowledge of any ad-
verſe poſſeſſion, went to make a ſettlement according to
his article. He found another in poſſeſſion, and could
not proceed to make his ſettlement, without taking poſ-
ſeſſion by force, (which would have been an offence) or
proſecuting an ejectment. He was not obliged to do
this ; but, in ſuch a caſe, had a right to ſay, that the
bargain, from this material defect, an adverſe poſſeſſion,
became void, and he had a right to demand back his mo-
ney. The defendant ſeems to have been conſcious of
this, and propoſed to do preciſely the ſame thing. I can
ſee no uſe in the evidence offered. But, if the defend-
ant's counſel think otherwiſe, we will reſerve the point.

There was a verdict for the plaintiff.